**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR. NO. 20-76 (EGS)(RMM)** |
| | : | |
| **REYSHAD BARCLIFT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E) and 18 U.S.C. § 3142 (d)(1)(A)(iii) of the federal bail statute.   The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### I.   Procedural History

The defendant is charged by indictment with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1). At today's initial appearance, the government intends to orally move for detention pending trial pursuant to the above-referenced provisions of the federal bail statute, and any additional provisions that may apply upon review of the Pretrial Services Agency report.   Upon agreement with the defense and in light of the current national public health emergency related to COVID-19, the government intends to immediately proceed to the detention hearing.

## II.  Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted.  Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery.   Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  See 18 U.S.C. § 3142(g).   A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. See 18 U.S.C. § 3142(e)(1).

### A.    Nature and Circumstances of the Offenses Charged

On October 3, 2019 at approximately 2:25 p.m., MPD NSID Major Case Unit officers executed a D.C. Superior Court search warrant at 750 19th Street, NE in Washington, D.C.   The location is a row house. When officers arrived to serve the warrant, they found the defendant on

the front porch of the house with three other individuals – Eugene Cleckley, Torrey Marable & Bjarni Cooper.   All four were stopped and secured.

Officer Stout then knocked and announced on the door of the location with no answer, and the officers forced entry.   The location was vacant.   Officers recovered a clear bag with a small amount of amphetamines in the back room, a bag with two pistol barrels in the bedroom closet, two speed loaders with 12 rounds of ammunition in the basement bedroom, two scales in the living room and one in the doorway, and empty zips, empty capsules and mail matter in the dining room. They did not recover any actual firearms or large amounts of narcotics in the house.

After executing the warrant, officers observed a white Ford Explorer SUV with D.C. tags URK 9899 parked in front of the location.   MPD Officers recovered the keys to the vehicle in a common area on the porch.   The officers deployed a K-9 dog who was on scene to do a sweep of the exterior of the vehicle.   The K-9 alerted on the left side of the vehicle.   The officers searched the vehicle and recovered a firearm from the center console.   The firearm was determined to be a Kahr Arms CW380 .380 caliber handgun with serial number RK3299.   The firearm was reported stolen from Raleigh, North Carolina on May 26, 2018.   At the time it was recovered, it was loaded with six (6) rounds in the magazine and one (1) in the chamber.   Also recovered from the vehicle was paperwork in the name of both the defendant and Bjarni Cooper.   The vehicle was determined to be registered to the defendant, and the paperwork in his name included an expired registration and expired insurance card for the Ford Explorer. The defendant was placed under arrest.

A buccal swab of the defendant was obtained via search warrant. The firearm was recovered by NSID on scene and was then recovered by DFS at NSID headquarters.   DFS

3

processed the firearm.   No prints were recovered.   However, DNA swabs were taken from the firearm and magazine.   DNA testing was completed by Signature Science on January 7, 2020. The DNA from the firearm was interpreted as a mixture of four individuals with at least one male contributor.   Obtaining the mixture is approximately 3.49 sextillion times more likely if it came from the defendant and three unknown individuals than if it came from four unknown individuals. The DNA on the magazine was interpreted as a mixture of three individuals with at least one male contributor.   Obtaining the mixture is approximately 2.37 thousand times more likely if it originated from the defendant and two unknown individuals than if it came from three unknown individuals.

**B.    Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.   The evidence against the defendant is strong.   The subject firearm was recovered from a vehicle that was registered to the defendant and which contained important documents connecting the defendant to the vehicle.   Additionally, the defendant's DNA was recovered from the firearm as well as the magazine in this case.   Importantly, the firearm was ready for use as it was loaded with six (6) rounds in the magazine and one (1) in the chamber.

**C.    The Defendant's History and Characteristics**

The third factor, the history and characteristics of the person, similarly weigh in favor of detention.   The defendant has a number of prior convictions and the nature of the defendant's criminal conduct has remained completely undeterred as evidenced by the defendant being on supervision at the time of the charged offense. The defendant also has the following prior convictions:

- Possession of a Controlled Substance – MDMA, Possession of a Controlled Substance – Marijuana, Possession of a Controlled Substance –Suboxone (Washington, D.C. 2019)

- Second Degree Theft (Washington, D.C. 2016)

- Attempted Distribution of Marijuana (Washington, D.C. 2016)

- Possession of Marijuana (Washington, D.C. 2014)

- Possession with Intent to Distribute Marijuana (Washington, D.C. 2014)

- Attempted Possession with Intent to Distribute Marijuana – Misdemeanor (Washington, D.C. 2013)

The government submits that the defendant should not be released.

> ### D. <u>Danger to the Community</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.   At the time of the charged offense, the defendant was (and remains) on supervised probation in D.C. Superior Court case number 2019 CF2 3121.   In that matter, a number of probation show cause hearings have been scheduled in relation to the defendant's non-compliance. Additionally, the defendant has a history of non-compliance while on supervision as a number of his supervision cases have terminated unsuccessfully.

Additionally, the defendant has two matters in D.C. Superior Court that are pending trial, but of which postdate the defendant's conduct in the instant case.   In D.C. Superior Court Case No. 2019 CMD 014498, the defendant is charged with Simple Assault, and a non-jury trial is scheduled for May 21, 2020. In that case, the defendant was arrested on November 13, 2019, approximately one month after the instant offense.   In D.C. Superior Court Case No. 2019 CF2 013755, the defendant is charged with Distribution of Phencyclidine, Unlawful Possession with

Intent to Distribute Phencyclidine and Unlawful Possession of Phencyclidine, and a jury trial scheduled for August 3, 2020.  In this case, the defendant was arrested on October 28, 2019, approximately three (3) weeks after the instant offense.

For these reasons, the government submits that the Court should order the defendant's detention during the pendency of this case to protect the community.

### E.   COVID-19 REPRESENTATIONS

The government anticipates that the defendant will also request release because of the COVID-19 Coronavirus (COVID-19) that is currently affecting the nation. The government believes that the defendant will argue that the D.C. jail is ill-equipped to handle the pandemic. While the government appreciates that no one is immune to the growing health crisis, we seek to assure the Court that the D.C. Department of Corrections (DOC) is taking this crisis seriously, and that at the time of this filing, one inmate has tested positive for the virus.   That inmate is currently in isolation in the infirmary and being monitored in accordance with the guidelines set by the Center for Disease Control (CDC).  For the last five (5) days, the inmate has been housed in a single-occupancy cell at CTF.   As set forth in more detail below, DOC is taking precautionary steps to address this problem, and any assertion that DOC is failing to take remedial action is without merit.

This office has consulted with DOC to obtain relevant information as to its handling of the public health crisis. Based upon this information, it appears that DOC is handling the situation as well as it can – no different than any organization in the United States.   Moreover, DOC is fully committed to protecting its inmates.

Specifically, DOC has done the following to ensure the safety of its incarcerated

population: (1) banned all non-attorney visits to limit unnecessary exposure; (2) implemented screening processes for all visitors and incoming inmates, including attorneys and staff; such screening includes assessing visitors and inmates for symptoms, sanitizing stations, etc.; (3) if incoming residents at a DOC facility fail the screening process, they are given a mask and taken to medical to determine if they require further hospitalization or testing. Moreover, if there is concern that an inmate has COVID-19, the inmate will be placed into a single cell in a specialized unit, where the inmate's only contacts are with medical staff, who will obtain COVID-19 testing within 3-4 days; (4) DOC has implemented an incident command program, where each day, DOC units meet to discuss ongoing processes to combat the virus; (5) DOC sends out daily reminders to its staff about taking preventative, prophylactic measures to avoid infection, such as washing hands, using sanitizer, etc.; (6) DOC has constant meetings with the D.C. Department of Health to ensure its procedures meet both local and national standards, to include following updated recommendations of the CDC; (7) DOC has continued to engage with the USAO and the local Public Defender Service to ensure continuity of operations; (8) DOC checks and rechecks its ventilation system to ensure the air quality in the facilities; (9) DOC is tracking and ordering additional cleaning and sanitation kits (for example, as of March 17, 2020, the D.C. jail had 55,200 bars of fresh soap), as well as protective gear; (10) DOC is working with MPD to limit the number of inmates coming into its facility at any given time; and (11) DOC has the capacity to quarantine approximately 100 inmates, if necessary.

In any event, there is nothing right now that suggests the defendant's particularized health necessitates his release. The defendant stands accused of a serious felony offense, and his record speaks to his danger to the community.  As detailed herein, the defendant has a considerable

criminal history, as well as a number of narcotics distribution crimes. Moreover, the defendant has performed poorly on supervision in the past and has incurred additional arrests since the date of the instant offense.   Finally, as previously mentioned, this case involves a firearm (containing the defendant's DNA) that was loaded and ready for use in a vehicle registered to the defendant.

Recent case law provides this Court a template on how to treat similar requests. In *United States v. Johnston*, No. 17-46 (RMM), 2017 WL 4277140 (D.D.C. Sept. 27, 2017), this very Court released a defendant for a limited purpose: to obtain surgical treatment. "This is a temporary release to home detention that is narrowly tailored to respond to the exigent and unusual circumstances presented by [the defendant's] cancer diagnosis and the status of his testing and treatment." *Id.* at *9. Here, while the government is unaware of any particularized health risk, a blanket request for release is inappropriate. While this pandemic is quite serious, DOC has handled viral outbreaks before – the flu and H1N1 – and the government is unaware of any custodial release on that basis alone.

A request for release must still be grounded in the factors set forth in 18 U.S.C. § 3142. For example, in *United States v. Parker*, 517 F. Supp. 2d 375, 377 (D.D.C. 2007), the Court held that a defendant's "history and characteristics" is only one of four factors that the Court must consider in determining the appropriateness of pretrial detention. *Id.* (defendant's medical conditions, including diabetes, asthma and hypertension, for which he required ongoing medication and treatment, cannot be dispositive in considering motion for release).

A D.C. district court recently addressed the specific issue of COVID-19 exposure too. In *United States v. Hill*, 19-cr-260 (APM) (D.D.C.), the defendant filed a motion for release. The Court denied the defendant's motion for release, without a hearing, noting:

> Defendant's release would present a danger to the community and that there is no condition or combination of conditions that would reasonably assure the community's safety. Although the court recognizes the danger presented by the coronavirus outbreak, and that older populations are more vulnerable, on balance release is not warranted at this time. The Department of Corrections is taking precautions to protect the inmate population, and there is not any reported case within the inmate population (to the court's knowledge). The court is prepared to reconsider this order should conditions change at the jail.

*Id.,* Minute Order, March 19, 2020.

Opinions filed in neighboring districts are in accord.[1] On March 17, 2020, Judge Paul Grimm of the U.S. District Court, Maryland, issued a written memorandum opinion on this very issue. *United States v. Martin*, 2020 WL 1274857, *2 (D. Md. March 17, 2020). Noting, appropriately, that the Court "takes this [COVID-19] health risk extremely seriously," the Court nevertheless recognized that "resolving . . . an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act." *Id.* at *3. In addressing the new issue raised by the defendant – COVID-19 – the Court nevertheless found that the defendant's health (his asthma, high blood pressure, and diabetes) was "insufficient to rebut the proffer by the Government that the correctional and medical staff at [the local detention facility] are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus." *Id.* at *4.  Finally, the Court questioned the defendant's proposal of GPS location monitoring even if the defendant was released subject to conditions, finding that such monitoring "is not a limitless resource, nor its installation and monitoring by

---

[1] *But see United States v. Stephens*, 15-cr-95-AJN (March 19, 2020 S.D.N.Y.) (COVID-19 outbreak and as well as a change in the facts of the case – a possible misidentification by an eyewitness – necessitated release). In choosing to release the defendant, the Court noted the defendant's lack of a violent record, the weakened state of the government's evidence, the failure of the local jail to arrange legal calls in preparation of his defense, and the effective ban on legal visits with limited exceptions as bases to implement release conditions. *Id.* Notably, the Court recognized that its decision cannot be made simply because of COVID-19. *See id.* at *6 n.3 ("The Court need not decide this additional factor [the current public health crisis] here because its determination that release is necessary for the preparation of the Defendant's defense is sufficient under § 3142(i)."

United States Pretrial Services officers without risk to those personnel . . . given the current recommendations regarding implementation of social distancing." *Id.*; *see also United States v. Lewis*, 19-cr-34-LMA-MBN (March 19, 2020 E.D. La.) ("If anything, the COVID-19 pandemic has reduced the availability of conditions to mitigate the risk to the community").

The government appreciates the gravity of this global pandemic and is committed to ensuring the safety and health of inmates like the defendant. Should circumstances change at the DOC, to the point that the defendant's health is actually in jeopardy, the defendant may request reconsideration. But at this stage and at this time, DOC appears dedicated and willing to address this public health crisis. Given the plans in place at the DOC, the lack of any confirmed cases, and the danger that the defendant represents to the community – the same community also affected by this illness – the government respectfully requests that this Court grant the government's motion.

### III.   Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

10

Respectfully submitted,

TIMOTHY J. SHEA
UNITED STATES ATTORNEY
D.C. Bar No. 437437

By:    /s/ Lisa N. Walters                
         Lisa N. Walters
         D.C. Bar No. 974-492
         Assistant United States Attorney
         Violent Crime and Narcotics Trafficking Section
         United States Attorney's Office for D.C.
         555 Fourth Street, N.W., Fourth Floor
         Washington, D.C. 20530
         E-mail: Lisa.Walters@usdoj.gov
         Telephone: (202) 252-7499

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, Dani Jahn, via electronic case filing (ECF), this 26th day of March, 2020.

            /s/                     
         Lisa N. Walters
         Assistant United States Attorney

11